April 1, 2024

Honorable James Donato
450 Golden Gate Avenue
San Francisco, CA 94102

> Re: *Five Point Holdings, LLC et al. v. Tetra Tech, Inc. et al.* and Related Litigation[1]: Steve Rolfe's Request for Protective Order

Dear Judge Donato:

Counsel for Steve Rolfe respectfully submits this letter brief requesting that the Court issue a protective order that precludes questions at the upcoming deposition of Mr. Rolfe regarding the substance of communications he had, or will have, with counsel for the Tetra Tech Defendants in preparation for that deposition. Mr. Rolfe, a defendant in *Bayview v. Tetra Tech EC, Inc. et al.* (No. 19-cv-01417) ("*Bayview*"), and his wife, Tina Rolfe, have separate joint defense agreements ("JDAs") with the Tetra Tech Defendants. However, at Mrs. Rolfe's deposition on March 27, 2024, counsel for Five Point proclaimed that a joint defense agreement could not protect the attorney-client privilege and repeatedly probed the substance of Mrs. Rolfe's preparation sessions, over objection, for over a quarter of the full day deposition. Counsel did so notwithstanding objections and instructions from counsel and pleas from the witness that she was suffering physically, confused, and struggling to follow his questions. Mr. Rolfe moves for a protective order to make clear the JDA protects the substance of discussions between him, his counsel, the Tetra Tech Defendants, and their counsel to prevent similarly harassing inquiries during his upcoming deposition.

Mr. Rolfe's deposition was noticed by Five Point on February 27, 2024, to take place starting on March 19. The notice was for a two-day deposition by Five Point and the "Side 1" Parties under the Case Management Order. Mr. Rolfe was to sit once for testimony in all related cases, inclusive of the False Claims Act case against the Tetra Tech Defendants (13-cv-03835) and the *Bayview* litigation in which Mr. Rolfe is a defendant (19-cv-01417). On March 27, 2024, at Tina Rolfe's deposition, Five Point's counsel asked repetitive, harassing, and invasive questions about communications Mrs. Rolfe had with her counsel and counsel for the Tetra Tech Defendants in advance of her deposition. Those communications were made pursuant to a JDA and are protected by the attorney-client privilege. The appropriate objections were made and instructions not to answer were given to the witness, but Five Point's counsel persisted nonetheless, harassing the witness to the point of obvious distress.

The assertion of privilege was clear, and if counsel wanted a record on which to challenge the privilege assertion, he had that in short order. After Mrs. Rolfe testified she met with her counsel and counsel for the Tetra Tech Defendants, counsel for Tetra Tech made clear on the record that the parties have a JDA. Tr. 240:25-241:2.[2] When Five Point's counsel continued to question, Mrs. Rolfe's counsel asserted the privilege and instructed not to answer. Tr. 236:8-13. Counsel

---

[1] 13-cv-03835; 16-cv-1106; 16-cv-1107; 18-cv-05330; 19-cv-01417; 19-cv-7510; 20-cv-1485; 20-cv-1480; 20-cv-1481; 19-cv-04704.
[2] Counsel is prepared to submit a highlighted transcript upon request.

Honorable James Donato
April 1, 2024; Page 2

for the Tetra Tech Defendants explained: "It's a common-interest agreement. It's a joint defense agreement [and the presence of Tetra Tech counsel at Mrs. Rolfe's preparation] does not break the privilege." Tr. 243:3-5.[3] In response, Five Point's counsel proclaimed "[t]hat's not an attorney-client privilege" (Tr. 241:3-4), argued that counsel "cannot instruct a witness based on a common interest privilege" (Tr. 243:8-10), and claimed to have "never seen anything like this before in [his] career" (Tr. 246:14-20).[4] He exclaimed that "there is no chance you have attorney-client privilege" (*Id.*) and continued to ask probing questions of Mrs. Rolfe about the substance of her preparation, over objections and instructions from counsel, for hours. *See, e.g.*, Tr. 241:18-25 ("Q. What was the – what was the subject of the conversation—we'll be back here for this. So I want to know. What was the subject…fine…What was the subject of the discussion that you had with Mr. Brown?"); Tr. 246:19-23 ("There is no chance you have attorney-client privilege with respect to a conversation you – he has with her even with her counsel present. That is not an attorney-client communication."); Tr. 254:4-16 ("We're not taking a break until I'm done with this…You object all you want to…I'm not going off the record until I'm done with this examination."); Tr. 262:3-4 ("[in response to a request for a break] Not yet. Not yet. I'm not done yet."); Tr. 262:12-13 ("I'm badgering this witness? I don't think I'm badgering this witness"); Tr. 262:22-263:8 ("I want to know what was said during the course of this second meeting where [Mrs. Rolfe's counsel] was on the Zoom, and I – there was a woman on the Zoom too—we're not sure what her name was—and Mr. Brown was in your house. Okay? So I want to ask you some questions about that, what was said. So I – so let's start off with, you know, what was – what was discussed?"). The inquiry makes up *89* pages of the 383-page transcript. Counsel for the U.S., Tr. 243:6-7, and counsel for Mrs. Rolfe, Tr. 246:16-18, offered early on to call the Court, which counsel for Five Point refused. Tr. 247:1-3. Instead, Five Point continued its harassing exam. Tr. 272:16-21 ("I want to be very clear about this, all right? I'm allowed to ask questions, okay? Once—once—once I think a privilege is broken here—all right? – I'm allowed to ask these questions.")

Counsel for Five Points' behavior at Mrs. Rolfe's deposition was particularly concerning given Five Point's counsel's threatening questions about criminal liability despite not being a prosecutor, (Tr. 318:18-22 "did they tell you that, 'Hey, you know, Mrs. Rolfe, you could still be prosecuted for criminal violations having to do with activities that took place at Hunters Point'?"), and Mrs. Rolfe's significant health issues, which were made clear to all counsel before and during the deposition (Tr. 26:7-8 ("I understand that you—you have some health difficulties these days?"))  Mrs. Rolfe is ill and had to be escorted to the deposition, and in and out of the deposition room, by counsel in a wheelchair. Mrs. Rolfe's ailments worsened throughout the day

---

[3] Counsel did not need the extensive time he took to build a record for a motion, especially given the witness testified she did not have a clear memory of her preparation sessions. Tr. 245:22-23 ("Again, last—crap. I don't know the exact date. He may have it."); 281:5 ("I'm totally losing it here"). She met three times with Tetra Tech counsel (March 19 in person in Florida, March 26 on the telephone, and March 27 in person in Florida). Her counsel was present on March 19 via videoconference and in person on March 27. He was not on the March 26 call. The JDA protects each substantive communication. *United States v. Austin*, 416 F.3d 1016, 1021-22 (9th Cir. 2005).
[4] Counsel's position is perplexing given his own invocation of the common interest to shield work product between his client and the United States.

Honorable James Donato
April 1, 2024; Page 3

under the harassing and abusive examination by Five Points' counsel. *See*, *e.g.*, Tr. 185:3 ("My eyes are killing me); Tr. 282:15-16 ("Just—I'm losing it here. I'm sorry. I'm just—my eyes are killing me."); Tr. 235: 9-14 ("That—wait. I'm sorry. I've just gotten….light-headed and…can't think); Tr. 319:16-18 ("No. No. I don't—you're killing me. I don't that it was ever said to me, no.").

I. **Mr. Rolfe's Joint Defense Agreement Protects Privileged Communications**

On December 1, 2023, Mr. Rolfe, his counsel, the Tetra Tech Defendants, and their counsel entered into a JDA, which provides that "communications made and/or documents shared between the Parties, their individual attorneys, or between a Party and any of their individual attorneys … are subject to the Joint Defense Doctrine." The parties have communicated regarding Mr. Rolfe's deposition. Those communications are privileged. Federal common law "governs a claim of privilege" with respect to federal question claims and pendent state law claims. Fed. R. Evid. 501; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016). Federal privilege law applies in these related cases given the Court's federal question jurisdiction. *See United States ex rel. Jahr v. Tetra Tech EC, Inc.*, 2022 WL 2317268, at *1 (N.D. Cal. June 28, 2022) ("These qui tam cases under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, are part of the sweeping litigation before the Court ….").

Federal courts recognize a "joint defense privilege," which is "an extension of the attorney-client privilege, and … establish[es] a duty of confidentiality on the part of the additional attorney and party to the agreement." *United States v. Gonzalez*, 669 F.3d 974, 981 (9th Cir. 2012).[5] "The joint defense privilege, in fact, protects not only the confidentiality of communications passing from a party to his or her attorney but also 'from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.'" *United States v. Austin*, 416 F.3d 1016, 1021-22 (9th Cir. 2005); *see also Shenwick v. Twitter*, 2019 WL 3815717, at *2 (N.D. Cal. Apr. 1, 2019). Under settled law governing the joint defense privilege, a party to a JDA who receives privileged communications and documents "stands under the same restraints arising from the privileged character of the document as the counsel who furnished it, and consequently [s]he has no right, and cannot be compelled, to produce or disclose its contents." *Gonzalez*, 669 F.3d at 978 (quoting *Continental Oil Co. v. U.S.*, 330 F.2d 347, 349-350 (9th Cir. 1964)). Documents and communications shared between Mr. Rolfe and counsel for the Tetra Tech Defendants pursuant to the JDA are subject to the joint defense privilege. Mr. Rolfe cannot be compelled to disclose such documents or communications. Five Point counsel's harassing questioning of Mrs. Tina Rolfe on this issue, and insistence that he can compel testimony about the substance of preparation sessions subject to a JDA, necessitate this motion for a protective order.

---

[5] California and Florida state privilege law is in accord. *OXY Resources Cal. v. Superior Ct.*, 115 Cal. App. 4th 874, 637-38 (2004); *Volpe v. Conroy.*, 720 So. 2d 537, 539 (Fla. Dist. Ct. App. 1998); *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 440 (Fla. Dist. Ct. App. 1987).

Honorable James Donato
April 1, 2024; Page 4

Respectfully submitted,

LAW OFFICES OF JOHN E. COWAN

*/s/ John E. Cowan*
JOHN E. COWAN
100 Pine St, Suite 1250
San Francisco, CA 94111
johncowanlaw@gmail.com

*Attorney for STEVE ROLFE*