# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. JAHR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., et al,<br><br>Defendants. | **TRIAL SCHEDULING JOINT STATEMENT**<br><br>**Assigned to Hon. Judge James Donato**<br><br>Case No. 3:13-cv-03835-JD |
| LINDA PARKER PENNINGTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al*,<br><br>Defendants. | Case No. 3:18-cv-05330-JD |
| BAYVIEW HUNTERS POINT RESIDENTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al*,<br><br>Defendants. | Case No. 3:19-cv-01417-JD |
| KEVIN ABBEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH EC, INC., *et al.*,<br><br>Defendants. | Case No. 3:19-cv-07510-JD |
| CPHP DEVELOPMENT, LP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH INC., *et al.*,<br><br>Defendants. | Case No. 3:20-cv-01485-JD |
| FIVE POINT HOLDINGS, LLC, *et al.*,<br><br>Plaintiffs, | Case No. 3:20-cv-1480-JD |

1

|   |   |
|---|---|
| v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>Defendants. | |
| FIVE POINT HOLDINGS, LLC, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TETRA TECH, INC., *et al.*,<br><br>Defendants. | Case No. 3:20-cv-01481-JD |
| TETRA TECH EC, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CH2M HILL, INC., BATTELLE MEMORIAL INSTITUTE, CABRERA SERVICES, INC., PERMAFIX ENVIRONMENTAL SERVICES, INC., AND SC&A, INC.,<br><br>Defendants. | Case No. 3:20-cv-04704-JD |

The parties in the following cases, by and through their respective counsel, jointly submit this Joint Status Conference Statement pursuant to the Court's Civil Minute Order dated May 20, 2024, in the Relator Case, Parcel A Case, the Building 606 Case, the Residents' Case, Commercial Cases and the Contractor Case, which are defined as follows:

"**False Claims Act Case**" against Defendant Tetra Tech EC is: *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD, filed August 19, 2013.  As explained below, this case also has relators and claims separate from the False Claims Act, such as CERCLA claims.

"**Relator Case A**" against Defendant Tetra Tech EC is: *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD, filed August 19, 2013.

"**Relator Case B**" against Shaw Defendants involving Treasure Island is: *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD, filed August 19, 2013/United States of America, ex rel. Smith, et al. v. Tetra Tech EC, Shaw Environmental, et al.*, Case No. 16-CV-1106-JD, filed March 4, 2016.

"**Relator Case C**" including claims against TtEC, subcontractors and individuals involving Treasure Island, Alameda Naval Base, and Hunters Point for FCA violations and conspiracy is: *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD, filed August 19, 2013/United States of America, ex rel. Wadsworth v. Tetra Tech EC, Radiological Survey & Remediation Services, Inc., IO Environmental & Infrastructure Inc., et al.*, Case No. 3_16-CV-1107-JD, filed March 4, 2016.

"**Parcel A Case**" is: *Pennington, et al, v. Tetra Tech, Inc. et al.*, Case No. 3:18-cv-05330-JD, filed in Superior Court July 24, 2018 and removed August 29, 2018.

"**Building 606 Case**" is: *Kevin Abbey, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:19-cv-07510-JD, filed November 14, 2019.

"**Residents' Case**" is: *Bayview Hunters Point Residents, et al. v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-01417-JD, filed May 1, 2018 in Superior Court and removed March 18, 2019.

"**Commercial Cases**" are: *Five Point Holdings, LLC, et al. v. Tetra Tech, Inc. et al.*,

Case No. 3:20-cv-01481-JD) ("Five Point"); *Five Point Holdings, LLC, et al. v. United States*, Case No. 3:20-cv-01480-JD; and *CPHP Development, LLC, et al. v. Tetra Tech, Inc. et al.*, Case No. 3:20-cv-01485-JD ("Lennar"), filed February 27, 2020.

"**Contractor Case**": *Tetra Tech EC Inc. v. CH2M Hill, Inc., Battelle Memorial Institute, Cabrera Services, Inc., Permafix Environmental Services, Inc., and SC&A, Inc.*, Case No. 3:20-cv-04704-JD, filed July 14, 2020; First Amended Complaint filed February 8, 2021.

All Parties named in the above referenced cases (collectively, the "Actions") are referred to collectively as the "Parties" or in the singular as a "Party."

I. **SIDE ONE'S POSITION**

Side One proposes the following order for trials in the related cases:

1) **False Claims Act Case + Relator Case A**

   - Consistent with direction from the Court, the first trial will include and focus on the United States' False Claims Act lawsuit against Tetra Tech EC.

   - The United States and Relators believe, agree, and propose that related common law claims of fraud and contract set forth in the United States' Second Amended Complaint First through Fourth Causes of Action against Tetra Tech EC about Hunters Point, as well as Relators' First Cause of Action for PCB Hot Spot Soil Fraud also at Hunters Point be tried along with the False Claim Act claims.

   - The United States and Relators believe, agree, and propose that Relators' other non-intervened causes of action should be tried afterward because they involve allegations regarding other Navy bases, such as Treasure Island and Alameda Naval Air Station, and other defendants than Tetra Tech EC, including the Shaw Defendants against whom claims are raised regarding Treasure Island, and sub-contractors involving multiple Navy base locations.

   - The Shaw Defendants and Relators have submitted a joint proposal that the claims against the Shaw Defendants go to trial in mid-September of 2026 or soon thereafter. The United States expressed to Relators that it does not oppose the non-intervened claims of Relators against the Shaw Defendants, or any of their other claims than the PCB Hot Spot Soil Fraud claim, proceeding in a later trial than the initial trial before the court.

2) **Commercial Cases**: *Five Point Holdings, LLC et al. v. Tetra Tech, Inc. et al.*, Case No. 3:20-cv-01481-JD) ("Five Point"); *Five Point Holdings, LLC et al. v. United States*, Case No. 3:20-cv-01480-JD) and *CPHP Development, LLC et al. v. Tetra Tech, Inc. et al.*, Case No. 3:20-cv-01485-JD ("Lennar").

4

- Developers propose to try together their cases against Tetra Tech and the United States.  The cases against Tetra Tech would be submitted to a jury, and the cases against the United States would be submitted to the Court at the same time. The Court can decide whether and to what extent to use jury findings as part of its role as trier of fact in the case against the United States.

- Developers will introduce in the Commercial Cases evidence of fraud and other misconduct by Tetra Tech (regardless of the outcome of the first case to be tried, likely the FCA case) in support of their causes of action against Tetra Tech and their requests for punitive damages.  Developers anticipate that that the findings in the United States' FCA case against Tetra Tech, which also sound in fraud, may resolve some of the major issues in the Developers' cases.

- Developers submit that the Commercial Cases should be tried right after the FCA case because the Commercial Cases are most like the core FCA case that this Court has indicated should go first; that is, the cases share the most similar nucleus of facts, scope, and causes of action than any other cases in the Action.

- Moreover, the Commercial Cases were filed years before the Contractor Case, have been developed much more thoroughly and robustly in discovery than the Contractor Cases, and are further along in factual and strategic development.

- The Commercial Cases are the highest profile cases with the largest damage claims (even greater than the FCA case) in the Action. Resolution of the Commercials Cases at the beginning of the trial sequence is far more likely to inform later, non-trial resolution of other cases than if smaller (in scope, value, and precedent), disparate matters are tried between the FCA and Commercial Cases.  Further, resolution of the Commercial Cases is important to development in the City of San Francisco.  Under its redevelopment agreement with the City, Five Point plans to build low income housing, community benefit projects, residential and related commercial developments in the community.  Having its issue with the United States and Tetra Tech resolved will clear the way for that development to occur without legal encumbrances.

- The Commercial Cases and FCA cases involve facts and events that span a far longer period than any other case, and certainly far longer than the Contractor Cases.  Specifically, Lennar's claims against the United States and Tetra Tech date back to 2002 (CPHP Development, LLC Compl ¶ 3, Dkt. 118), whereas CH2M Hill and the other defendants in the Contractor Case were not on site at HPNS until 2016 (CH2M Hill Compl. ¶ 47, Dkt. 1).  It would be most logical and efficient to try the two cases with the most similar timelines and claims – that is, the FCA and Commercial Cases – sequentially.

5

- Additionally, the Parcel A Case, Building 606 Case, and Residents' Case all involve individual personal injury claims, which require unique proof of harm and damages that is drastically different than that which will be developed in the Commercial and FCA cases. Like the Contractor Cases, discovery in these cases lags discovery in the Commercial Cases, making them ill-suited for early trial. Moreover, the theories of harm of those cases are based upon much more discrete facts and legal theories than in other, broader cases (the FCA and Commercial cases) that should be tried earlier.

- It comes as little surprise that Tetra Tech and the United States as a defendant in these proceedings would urge the Court to try the Commercial Cases and the end of the trial sequence. Five Point and Lennar have put the greatest resources into this litigation to prove beyond a preponderance of the evidence that Tetra Tech engaged in a massive fraud under the supervision of the Navy, which left radioactive soil in place at HPNS, and has caused serious injuries to the citizens of San Francisco and significantly stalled the largest anticipated residential and commercial development in the City's history. Time is of the essence to get the Commercial Cases resolved so that a terrible wrong that has been perpetrated against the Bay Area community, Five Point, and Lennar is rectified.

- Finally, all Side 1 parties agree that the Commercial Cases should proceed immediately after the FCA claims are tried.

3) **Parcel A Case**: *Pennington v. Tetra Tech, Inc. et al.*, Case No. 3:18-cv-05330-JD.

4) **Building 606 Case**: *Kevin Abbey v. Tetra Tech EC, Inc. et al.*, Case No. 3:19-cv-07510-JD.

5) **Residents' Case**: *Bayview Hunters Point Residents v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-01417-JD.

6) **Relator Case B** against Shaw Defendants involving Treasure Island: *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD/*United States of America, ex rel. Smith, et al. v. Tetra Tech EC, Shaw Environmental, et al,*. Case No. 16-CV-1106-JD. (Counsel for Plaintiff Relators and Defendants Shaw agree to trial in mid-September of 2026.)

7) **Relator Case C** including claims against TtEC, subcontractors and individuals involving Treasure Island, Alameda Naval Base, and Hunters Point for FCA violations and conspiracy: *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD/*United States of America, ex rel. Wadsworth v. Tetra Tech EC, Radiological Survey & Remediation Services, Inc., IO Environmental & Infrastructure Inc., et al.*, Case No. 3_16-CV-1107-JD.

8) **Contractor Case**: *Tetra Tech EC Inc. v. CH2M Hill, Inc., Battelle Memorial Institute, Cabrera Services, Inc., Permafix Environmental Services, Inc., and SC&A, Inc.*, Case No. 3:20-cv-04704-JD.[1]

- Although the Side 1 parties unanimously agree the Contractor Case should be tried last, Tetra Tech argues the Contractor Case should tried second. Rather than achieving judicial efficiency, this would force the least factually developed case, which has only been at issue for just over two years,[2] to trial before much older cases, with no substantive benefit.

- The Contractor Case is the only case in which Tetra Tech is a plaintiff. Tetra Tech's unstated but transparent motivation is to advance the one case in which it believes it has the possibility of monetary recovery to help fund Tetra Tech's defense and extend litigation in the remaining cases. This is neither efficient nor appropriate.

- Although Tetra Tech argues there is factual overlap between the Contractor Case and the FCA case, neither the legal theories nor the facts at issue actually substantially overlap. Tetra Tech's only remaining claims against the Contractor Defendants are premised on its theory that when the Navy hired CH2M and its subcontractors to review Tetra Tech's data after it was alleged that Tetra Tech engaged in fraudulent data certification (for which two Tetra Tech employees pled guilty), the work performed by CH2M and its subcontractors interfered with Tetra Tech's ability to be paid for its (fraudulent) work and to obtain new contracts with the Navy. Tetra Tech's claims and damages against the Contractor Defendants, and the relevant facts in the Contractor Case, relate exclusively to Tetra Tech's alleged inability to obtain payments and additional government contracts in the time period starting in 2016 at the earliest. Whether the United States, or any other entities, relied upon work done by CH2M and its subcontractors, has no bearing on the issues in the Contractor Case. Tetra Tech's suggestion that the Contractor Case should be consolidated with the United States' case is meritless—there are no common questions of law or fact between the two cases, no common claims, and consolidation of the Contractor Case with the first-to-be-tried FCA Case would confuse the jury (with Tetra Tech as both a plaintiff and defendant) and prejudice the Contractor defendants.

---

[1] Submitted by Defendants CH2M Hill, Inc. ("CH2M"); Battelle Memorial Institute ("Battelle"); Cabrera Services, Inc. ("Cabrera"); Perma-Fix Environmental Services, Inc. ("Perma-Fix"); and SC&A, Inc.'s ("SC&A," and collectively with CH2M, Battelle, Cabrera, and Perma-Fix, "Contractor Defendants").

[2] Procedurally, the Contractor Case is the latest filed case—filed seven years after some other cases at issue—and the least advanced in discovery. Although Tetra Tech filed its first complaint on July 14, 2020 alleging three causes of action (Negligence, Negligent Misrepresentation, and Equitable Indemnification), this Court granted the Contractor Defendants' Motion to Dismiss on each of those claims with leave to amend. Tetra Tech did not file its current complaint, bringing new theories (Inducing Breach of Contract, Intentional Interference with Contractual Relations, Negligence, Equitable Indemnification/Contribution, Unfair Business Practices (Cal. B&P Code 17200 et seq.), until February 8, 2021. After further motion practice, which resulted in a January 27, 2022 order dismissing three of Tetra Tech's claims, Tetra Tech's only remaining theories are Inducing Breach of Contract and Intentional Interference with Contractual Relations, which have only been at issue for slightly over two years.

- In contrast, the other cases concern Tetra Tech's underlying bad acts and falsification of data, which occurred in the 2003-2014 timeframe, and its subsequent concealment of those efforts, as reflected in the Plea Agreement of Stephen C. Rolfe filed with the Court on March 15, 2017. The damages in the earlier cases are unrelated to Tetra Tech's alleged loss of business due to the Contractor Defendants' alleged tortious interference. There is minimal factual, temporal, and legal overlap between the Contractor Case and the other cases. The vast majority of the witnesses and evidence in those cases will relate to the underlying bad acts and pre-2014 time period.

- Procedurally, while many of the other cases have been pending for as long as eleven years, the Contractor case is newer and less developed than the numerous older cases. Accelerating the case before the numerous substantially older cases would be inequitable.

- Finally, the Contractor Defendants note they have had a motion for summary judgment pending with the Court since November 3, 2023. Dkt. 157. Granting that motion—which argues (1) that Tetra Tech's entire lawsuit against CH2M and its subcontractors is time-barred by the operative two-year statute of limitations, and (2) that Tetra Tech's claims for inducement of breach of contract and interference with all fail on the merits—would dispose of the entire Contractor Case.[3]

## II.   SIDE TWO'S POSITION

The United States, Tetra Tech EC, Inc. and Tetra Tech, Inc. (collectively, the "Tetra Tech Parties"), IO Environmental & Infrastructure Inc., and Radiological Survey & Remedial Services, Inc., jointly propose the below schedule of cases, although the United States and Tetra Tech Parties disagree on two points further detailed below, <u>with the United States requesting and the Tetra Tech Parties opposing</u>: (1) severance of the CERCLA claims and FCA claims in *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD, and (2) inclusion of Relators' non-intervened HPNS First Cause of Action versus Tetra Tech EC, Inc. (only) in their Combined Third Amended Complaint ("TAC"), in the trial in *United States of America, ex rel. Jahr, et al. v. Tetra Tech EC, Inc. et al.*, Case No. 3:13-cv-03835-JD.

---

[3] The inducement of breach cause of action survived Defendants' second motion to dismiss only because Tetra argued that the Navy's suspension of Tetra Tech's work was a breach. Tetra Tech has since abandoned that argument, and case law confirms the Navy's suspension of work is not a breach as a matter of law because the contract could be terminated at the Navy's convenience, which means that it had no legal assurance of an ongoing contractual relationship with the Navy and must prove an independently wrongful act to prevail on its contractual interference cause of action, which it cannot do.

(1) *United States, et al. v. Tetra Tech EC, Inc.*, Case No. 3:13-cv-03835;

(2) *Tetra Tech EC, Inc. v. CH2M Hill, et. al.*, Case No. 3:20-cv-04704;

(3) Parcel A Cases (*Pennington, et. al. v. Tetra Tech, Inc.*, et. al., Case No. 3:18-cv-05330);

(4) Building 606 Cases (*Abbey, et al. v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-07510);

(5) Residents' Cases (*Carpenter, et al. v. Tetra Tech EC, Inc., et al.*, Case No. 3:19-cv-01417);

(6) Developers Cases (*Five Point Holdings, LLC, et al. v. United States*, Case No. 3:20-cv-01480; *Five Point Holdings, LLC, et al. v. Tetra Tech, Inc., et al.*, Case No. 3:20-cv-01481; *CPHP Development, LLC, et al. v. Tetra Tech, Inc., et al.*, Case No. 3:20-cv-01485), including counterclaims; and

(7) *United States, et al. v. Tetra Tech EC, Inc.*, Case No. 3:13-cv-03835 (Relators' Non-Intervened Claims).

**A.    *United States, et al. v. Tetra Tech EC, Inc.*, Case No. 3:13-cv-03835**

The United States and Tetra Tech Parties agree that the United States' claims asserted against Tetra Tech EC, Inc. ("TtEC"), Case No. 3:13-cv-03835, should be the first case to proceed to trial. There are disagreements on two issues:

**a.   Severance of CERCLA claims**

**(1)    United States' Position**

Plaintiff United States respectfully refers the Court to its statement related to trial scheduling, dated May 23, 2024, *United States, et al. v. Tetra Tech EC, Inc.*, Case No. 3:13-cv-03835, ECF No. 403, which sets forth its request to sever the CERCLA claims and the FCA claims pursuant to Fed. R. Civ. P. 42(b). Both liability and costs under CERCLA are issues for the court; accordingly, a separate bench trial would be appropriate and would be less onerous on the jury and this Court than trying a jury and bench trial concurrently.

**(2)    The Tetra Tech Parties' Position**

The United States proposes bifurcating its "first four causes of action in this case, which arise under the False Claims Act ("FCA") and common law . . . [from] the United States' fifth cause of action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which will be tried to the Court . . . later." ECF No. 403 at 2:4-8. The Tetra Tech Parties oppose bifurcation, which is not necessary, appropriate or efficient.

***First***, there is no dispute that there is a high degree of overlap among all the United States' claims. The United States expressly argued this point when seeking leave to amend its Complaint, and the Court relied on this point when granting leave. In its motion for leave to amend, the United States told the Court that its CERCLA claim would not "greatly alter the nature" of the existing FCA case and would instead merely "amplify allegations and claims ***emanating from the same facts*** already alleged." ECF 342 at 4-6, 9, 11 (emphasis added). And it argued that allowing its CERCLA amendment would "promote[] judicial economy by facilitating the complete adjudication of [this] dispute." ECF 342 at 7. The CERCLA claim's specific allegations begin at paragraph 161 of the Second Amended Complaint, which merely incorporates preceding allegations of the FCA and breach of contract claims, and ends at paragraph 178. *See* ECF. No. 372. Seven of the seventeen substantive paragraphs in the claim incorporate the prior FCA allegations, with express references to "[a]s described above" or "[b]ased on the actions described above." *Id*. Accordingly, the Court ruled that the new CERCLA claim is "sufficiently related to the United States' existing allegations" to grant leave to amend. ECF 371 at 13.

***Second***, the United States takes the litigation position, and courts have held, that collateral estoppel against the United States is limited to certain circumstances. *See, e.g., Watkins v. United States Army*, 875 F.2d 699 (9th Cir. 1989). As a result, findings made in the first trial against the United States may still need to be retried if the CERCLA claim was bifurcated and tried separately. That would potentially result in the inefficiency of back-to-back trials involving many of the same documents, facts, and witnesses. And it would also be incredibly prejudicial to TtEC. Beyond the cost and disruption of multiple overlapping trials, if the CERCLA claim was bifurcated, then the United States would surely seek to use any adverse

finding against TtEC from the FCA trial in the CERCLA trial, while seeking a do-over on trying any issues that were determined adversely against it in the first trial.

And *last*, while CERCLA damages may be a distinct damages theory, damages alone could be bifurcated—if necessary in the event of liability—rather than the entire claim. This would, as a practical matter, carve out what may be any arguably separate issue from the CERCLA claim, which could be decided, if necessary, after the trial on the merits of the claims.

For the above reasons, while the Tetra Tech Parties agree the United States' claims against TtEC should be tried first, all of the United States' claims should be tried together.

### b. Non-intervened FCA claims

#### (1) United States' Position

The United States does not oppose the inclusion of the Relators' non-intervened HPNS First Cause of Action versus Tetra Tech EC, Inc. in their Combined Third Amended Complaint, in the first trial along with the United States' FCA claims (Counts I-IV of the Second Amended Complaint in *United States, et al. v. Tetra Tech EC, Inc.*, Case No. 3:13-cv-03835). That will avoid two FCA trials about HPNS.

#### (2) The Tetra Tech Parties' Position

All the claims brought by Relators in which the United States chose not to intervene should be resolved last. *See* ECF No. 289. The United States does not oppose inclusion of the first cause of action (only) in the Relators' TAC in its trial, but that claim, like the others in Relators' TAC, is based on a disparate hodgepodge of factual assertions that are unconnected to the merits of any other litigation, and which the United States made the intentional decision ***not to*** pursue. There are no efficiencies to be gained from trying the first cause of action separately from the other claims in the Relators' TAC, and it should proceed with the others, to be tried last among all these matters.

**B.** *Tetra Tech EC, Inc. v. CH2M Hill, et. al.*, **Case No. 3:20-cv-04704**

The FCA case concerns claims submitted based upon alleged "falsified soil surveys, building surveys, and status survey reports" as well as breach of contract claims for alleged

failure to perform "soil and building surveys in accordance with MARSSIM and other contract specifications." ECF. No. 372 at ¶¶ 144, 158. The FCA complaint directly relies upon the work conducted by the CH2M parties to support the United States' claims. The reports prepared by the CH2M parties evaluated whether TtEC allegedly falsified soil surveys and building surveys.

TtEC's claims against CH2M are integral to the evaluation of any alleged fraudulent activity at Hunters Point and the propriety of any rework at the site. The evidence and witnesses will significantly overlap with the United States' FCA breach of contract and CERCLA claims. It is clear that other parties also intend to rely on the CH2M parties' reports. Five Point's alleged injury consists of delay caused by the CH2M parties' "re-evaluation" of TtEC's work and the resulting re-remediation work. *See* Compl., *Five Point Holdings, LLC, et al. v. Tetra Tech, Inc., et al*. No. 3:20-cv-01481 (N.D. Cal. Feb. 27, 2020), ECF No. 1 ¶¶ 53–55. Lennar, too, relies on the CH2M parties' reports as evidence of TtEC's wrongdoing. *See* First Am. Compl., *CPHP Development, LLC, et al. v. Tetra Tech, Inc., et al*., No. 3:20-cv-01485 (N.D. Cal. July 19, 2021), ECF No. 118, ¶¶ 207, 242. Accordingly, the CH2M case should proceed directly after the FCA case and in advance of the other litigation.

Indeed, if any action should be consolidated for trial with the United States' case against Tetra Tech EC, Inc., it is this case, as Navy documents produced in discovery have confirmed that the United States built its "damage models" for its FCA case by using "the CH2M database" and CH2M "draft reports."

  C. **Parcel A Cases (*Pennington, et. al. v. Tetra Tech, Inc., et. al.*, Case No. 3:18-cv-05330)**

  D. **Building 606 Case (*Abbey, et al. v. Tetra Tech EC, Inc.*, et al., Case No. 3:19-cv-07510)**

  E. **Residents' Case (*Carpenter, et al. v. Tetra Tech EC, Inc.*, et al., Case No. 3:19-cv-01417)**

The parties all agree that these three cases should be tried in this sequence, after at least the FCA claims in *United States, et al. v. Tetra Tech EC, Inc.*, Case No. 3:13-cv-03835. The

principal dispute among the parties is whether these trials will occur after *Tetra Tech EC, Inc. v. CH2M Hill*, et. al., Case No. 3:20-cv-04704, and/or the Developers Cases, discussed below.

### F. Developers Cases (*Five Point Holdings, LLC, et al. v. United States*, Case No. 3:20-cv-01480; *Five Point Holdings, LLC, et al. v. Tetra Tech, Inc., et al.*, Case No. 3:20-cv-01481; *CPHP Development, LLC, et al. v. Tetra Tech, Inc. et al.*, Case No. 3:20-cv-01485)

The plaintiffs in these cases, Lennar, Five Point, and their affiliates (the "Developers") are large corporate entities—Lennar's market capitalization is over $40 billion—whose claims focus on alleged damages resulting from the alleged delay in the transfer of the parcels of land that form Hunters Point Naval Shipyard. TtEC also has equitable indemnity counterclaims against the Developers. The Developers cases should proceed after *Tetra Tech EC., Inc. v. CH2M Hill*, and after the homeowners', police officers', and residents' cases listed above.

*First*, facts underlying the re-evaluation and rework that have caused the alleged delay will have been necessarily litigated in the United States' FCA, breach of contract and CERCLA claim, and in Tetra Tech's claims against CH2M. Therefore, those cases should proceed before the Developers cases.

*Second*, the passage of time will aid the determination of the Developers' claims, not hinder it. The more time that passes, the more certain the parcel transfer schedules will become. As a result, if the Developers' claims survive to trial (which they should not), their damages claims will likely become less speculative over time as the actual schedule of the transfer of the land and any additional reasons for current and future delays become more crystallized.

*Third*, TtEC's equitable indemnity counterclaims against the Developers are based on the potential outcomes of the Parcel A, Building 606 and Residents cases. Those counterclaims will not be ripe until those cases are resolved, which is why they need to be tried prior to the Developers Case, or else those claims may need to be severed and tried later, which would be inefficient for the Parties and the Court.

And *fourth*, there are myriad issues unique to the Developer cases, including that both the Five Point entities and the Lennar entities have claims against the United States that they

1  propose be tried to the Court at the same time as their jury claims against the Tetra Tech Parties.
2  In addition, a trial in the Developer cases—if not decided on summary judgment, which the Tetra
3  Tech Parties assert is appropriate—would require a determination about what the Developers
4  knew about potential delays and when they knew it in order to adjudicate statute of limitations
5  defenses. This dispositive issue will require additional witnesses and documents that will not be
6  required in other cases. Beyond these two Developer-specific issues, the Developers' alleged
7  damages are unique to these cases, and are based on delay to transfer schedules that will require
8  fact and expert testimony not required in any other trial.
9       For all these reasons, the Developers Case should be tried after the resolution of *Tetra*
10 *Tech EC, Inc. v. CH2M Hill* and the Parcel A, Building 606 and Residents cases.
11       **G.   United States, et al. v. Tetra Tech EC, Inc., Case No. 3:13-cv-03835**
12              **(Relators' Non-Intervened Claims).**
13       The Tetra Tech Parties' position is that all of the Relators non-intervened—i.e., every
14 claim in their TAC—be tried together, as the last trial among all these matters. The United
15 States disagrees that the Relators' first claim should be tried with the others, but does agree that
16 the remaining claims in the TAC should be tried together, as the last of the trials in these matters.
17 In addition to the lack of efficiencies created by trying these claims any earlier, discovery
18 relating to two other sites at issue in Relators' claims—Treasure Island and Alameda—was
19 bifurcated from discovery relating to Hunters Point Naval Shipyard and has not begun. Further,
20 the Tetra Tech Parties' position is that trying any of the non-intervened relator claims before any
21 other case creates no efficiencies, and this case is the least far along of all the pending cases. As
22 a result, among all the matters competing for the Court's resources, there is no reason why this
23 case, to the extent it can survive to trial, should be tried before any other.
24 **III.   JOINT STATEMENT OF FALSE CLAIMS ACT RELATORS AND SHAW**
25        **DEFENDANTS[4]**
26
27
28 [4] Defendants Shaw Environmental & Infrastructure, Inc., Chicago Bridge & Iron Company N.V., Aptim Corporation, and Aptim Federal Services, LLC.

The False Claims Act case, 3:13-cv-03835-JD, contains in Relators' Combined Third Amended Complaint ("TAC" ECF #289) non-intervened claims involving alleged false claims of conduct at Hunters Point against defendants other than the Shaw Defendants. Relators believe their False Claims Act claims about Hunters Point conduct and false claims against Tetra Tech EC should be tried in the first case with the United States Hunters Point False Claims Act, contract and fraud allegations contained in the United States Second Amended Complaint (ECF #342) that also pertain to Hunters Point. Relators agree with the United States' position that the United States' fifth cause of action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") be tried by the Court later. The Shaw Defendants take no position with respect to the timing of Relators' non-intervened Hunters Point claims against other defendants.

The Relators' TAC also contains non-intervened False Claims Act claims alleged by Relator Anthony Smith against the Shaw Defendants, however, pertaining to conduct at Treasure Island. (See, TAC ECF #289, see 5th, 6th, 7th, 10th, 11th, 12th, and 13th causes of action). Court Order has separated discovery of Hunters Point and non-Hunters Point for False Claims Act causes of action such that discovery pertaining to locations other than Hunters Point has been deferred to Hunters Point discovery. (ECF # 325). Relator Smith and the Shaw Defendants are in agreement that the non-Hunters Point False Claims Act allegations in the Relators' TAC against the Shaw Defendants should be tried separately and later than the intervened and non-intervened Hunters Point False Claims Act litigation.

Trial in the formerly related *U.S. ex rel. McLaughlin v. Shaw Environmental*, 14-cv-01509-SK, pending before Magistrate Judge Kim is presently set for July 14, 2026. Relators and the Shaw Defendants jointly request that the trial of the Treasure Island claims against the Shaw Defendants (TAC ECF #289, see 5th, 6th, 7th, 10th, 11th, 12th, and 13th causes of action) be bifurcated and set for trial before this Court on a date of September 14, 2026 or thereafter, being 60 days after the trial date before Judge Kim.

Respectfully submitted,

DATED: May 31, 2024                    COTCHETT, PITRE & McCARTHY, LLP

                                       By: /s/ Joseph W. Cotchett
                                       JOSEPH W. COTCHETT (SBN 36324)
                                       ANNE MARIE MURPHY (SBN 202540)
                                       DONALD J. MAGILLIGAN (SBN 257714)
                                       *Attorneys for PENNINGTON PLAINTIFFS*

DATED: May 31, 2024                    WALKUP, MELODIA, KELLY AND
                                       SCHOENBERGER

                                       By: /s/ Khaldoun A. Baghadi
                                       KHALDOUN A. BAGHADI (SBN 190111)
                                       SARA M. PETERS (SBN 260610)
                                       JADE SMITH-WILLIAMS (SBN 318915)
                                       *Attorneys for PLAINTIFFS KEVIN ABBEY, ET AL.*

DATED: May 31, 2024                    BONNER & BONNER

                                       By: /s/ Charles A. Bonner
                                       CHARLES A. BONNER (SBN 85413)
                                       A. CABRAL BONNER (SBN 247528)
                                       *Attorneys for PLAINTIFFS BAYVIEW HUNTERS POINT RESIDENTS*

DATED: May 31, 2024                    O'MELVENY & MYERS LLP

                                       By: /s/ David J. Marroso
                                       DANIEL M. PETROCELLI (SBN 97802)
                                       DAVID J. MARROSO (SBN 211655)
                                       GEOFFREY H. YOST (SBN 159687)
                                       MADHU R. POCHA (SBN 260997)
                                       *Attorneys for LENNAR CORP.; HPS DEVELOPMENT CO., L.P.; HPS1 BLOCK 50 LLC; HPS1 BLOCK 51 LLC; HPS1 BLOCK 53 LLC; AND HPS1 BLOCK 54 LLC*

DATED: May 31, 2024                    ALSTON & BIRD

                                       By: /s/ Jeffrey D. Dintzer

|   |   |   |
|---|---|---|
| 1 |  | JEFFREY D. DINTZER |
| 2 |  | MEREDITH JONES KINGSLEY |
|   |  | GREGORY S. BERLIN |
| 3 |  | VICKIE CHUNG RUSEK |
|   |  | *Attorneys for FIVE POINT HOLDINGS, LLC, CP DEVELOPMENT CO., LLC* |

DATED: May 31, 2024         LAW OFFICES OF RICHARD M. STEINGARD

By: */s/ Richard M. Steingard*
RICHARD M. STEINGARD (SBN 106374)
*Attorneys for DEFENDANT BILL DOUGHERTY*

DATED: May 31, 2024         WILMERHALE LLP

By: */s/ Davina Pujari*
DAVINA PUJARI
CHRISTOPHER T. CASAMASSIMA
CHRISTOPHER A. RHEINHEIMER
SAMUEL C. LEIFER
MICHAEL J. BROWN
*Attorneys for TETRA TECH, INC., TETRA TECH EC, INC., ANDREW BOLT*

DATED: May 31, 2024         UNITED STATES OF AMERICA, CIVIL DIVISION/TORTS BRANCH

By: */s/ Caroline Stanton*
CAROLINE STANTON
MICHAEL WILLIAMS
ALBERT LAI
ROSEMARY YOGIAVEETIL
KENNETH A. PILGRIM
CINDY HURT
*Attorneys for Defendant UNITED STATES OF AMERICA*

DATED: May 31, 2024         UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION

By: */s/ Thomas Morris*

17

|   |   |   |
|---|---|---|
| | | JAMIE ANN YAVELBERG |
| | | PATRICK M. KLEIN |
| | | THOMAS MORRIS |
| | | JONATHAN K. HOERNER |
| | | JOHN F. SCHIFALACQUA |
| | | ADAM J. DICLEMENTE |
| | | *Attorneys for Plaintiff UNITED STATES DEPARTMENT OF JUSTICE* |

DATED:  May 31, 2024                PERKINS COIE

By: */s/ Oliver Gold*
OLIVER GOLD
MEREDITH JONES-MCKEOWN
*Attorneys for Defendant CH2M HILL*

DATED:  May 31, 2024                DAVIS WRIGHT TREMAINE LLP

By: */s/ Joe Addiego*
JOSEPH E. ADDIEGO, III
*Attorneys for Defendant BATTELLE MEMORIAL INSTITUTE*

DATED:  May 31, 2024                FURUKAWA WA CASTLES LLP

By: */s/ Bruce N. Furukawa*
BRUCE N. FURUKAWA
*Attorneys for Defendant CABRERA SERVICES, INC.*

DATED:  May 31, 2024                ZELMS ERLICH & MACK

By: */s/ Charles G. Gomez*
CHARLES G. GOMEZ
*Attorneys for Defendant SC&A, INC.*

DATED:  May 31, 2024                EDLIN GALLAGHER HUIE + BLUM

By: */s/ Erin K. Poppler*
ERIN K. POPPLER
*Attorneys for Defendant PERMA-FIX ENVIRONMENTAL SERVICES, INC.*

| | | |
|---|---|---|
| DATED: May 31, 2024 | | BORDIN SEMMER LLP |
| | | By: |
| | | */s/ Bryan C. Swain* |
| | | BRYAN C. SWAIN |
| | | *Attorneys for Defendants Radiological Survey & Remedial Services, LLC and individuals Daryl DeLong and Brian Henderson* |
| | | |
| DATED: May 31, 2024 | | TROPEA MCMILLAN, LLP |
| | | By: |
| | | */s/ Santino M. Tropea* |
| | | SANTINO M. TROPEA |
| | | *Attorneys for Defendant IO Environmental & Infrastructure, Inc.* |

**Civil Local Rule 5-1(i)(3) Attestation**

Pursuant to Local Rule 5-1(i)(3), I, David Marroso, the ECF filer of this document, hereby attest that I obtained concurrence in the filing of this document from each of the other signatories.

Date: May 31, 2024

By:   */s/ David Marroso*

David Marroso